**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Michael D. O'Mara
Julie M. Murphy
Daniel Pereira
Stradley Ronon Stevens & Young, LLP
457 Haddonfield Rd., Suite 100
Cherry Hill, New Jersey 08002
T: (856) 321-2409
F: (856) 321-2415
E-Mail: momara@stradley.com
          jmmurphy@stradley.com
          dpereira@stradley.com;

*Attorneys for Paulsboro Waterfront Development, LLC*

| | |
|---|---|
| In re:<br><br>EEW AMERICAN OFFSHORE STRUCTURES INC., *et al.*,<br><br>Debtors. | Case No.: 26-13901 (JNP)<br><br>Chapter 11<br><br>Honorable Jerold N. Poslusny, Jr.<br>(Joint Administration Requested) |

**OBJECTION OF PAULSBORO WATERFRONT DEVELOPMENT, LLC**
**TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN**
**POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO**
**USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING**
**SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (IV)**
**GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE**
**AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING AND (VII)**
**GRANTING RELATED RELIEF**

Paulsboro Waterfront Development, LLC ("PWD") by and through its undersigned

counsel, hereby files this Objection (the "Objection") to the *Debtors' Motion For Entry of Interim*

*and Final Orders (I) Authorizing The Debtors To Obtain Postpetition Financing, (II) Authorizing*

*The Debtors To Use Cash Collateral, (III) Granting Liens And Providing Superpriority*

*Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying The Automatic Stay, (VI) Scheduling A Final Hearing And (VII) Granting Related Relief* [Dkt. No. 10] (the "<u>DIP Financing Motion</u>").  In support of this Objection, PWD respectfully states as follows:

### INTRODUCTION

1.      EEW American Offshore Structures Inc. ("<u>AOS</u>") and EEW AOS Paulsboro Urban Renewal, LLC ("<u>URE</u>" and together with AOS, the "<u>Debtors</u>") have no business operations, no assets and only a few legitimate, non-insider creditors.  The Debtors seek to obtain financing from an insider for the sole benefit of the Debtors' owners and on terms that flout the provisions of the Bankruptcy Code.

2.      By the DIP Financing Motion, the Debtors  seek approval to: (i) obtain post-petition financing from an acknowledged insider of the Debtors (the "<u>Insider DIP Lender</u>");[1] (ii) roll-up pre-petition credit facilities, including unsecured credit facilities, to be secured by superior priority administrative claims, including liens on previously unencumbered assets (the "<u>Roll-up</u>"); and (iii) obtain other special protections afforded only to good faith post-petition lenders after satisfaction of rigorous criteria.

3.      PWD is a creditor and the holder of potential administrative claims arising under that certain Sublease dated January 1, 2021 (as amended, the "<u>Sublease</u>") between PWD (as Sublandlord) and URE (as Subtenant). A true and correct copy of the Sublease, with amendments, is attached to the Declaration of Daniel M. Pereira (the "**Pereira Declaration**") as Exhibit A and incorporated herein by reference.

---

[1] As outlined in the Declaration of Tom Pratt in Support of Chapter 11 Petitions and First Day Motions [D.I. 11] (the "<u>First Day Declaration</u>"), the proposed DIP lender is 100% owned by three individuals in Germany who also, indirectly through the Debtors' German holding company, own 100% of the interests in the Debtors (*see* First Day Declaration, Ex. A).

4.      On April 14, 2026, PWD filed an Objection to the Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing The Debtors To Obtain Postpetition Financing, (II) Authorizing The Debtors To Use Cash Collateral, (III) Granting Liens And Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying The Automatic Stay, (VI) Scheduling A Final Hearing And (VII) Granting Related Relief [Dkt. No. 23] (the "Initial PWD Objection").  The Initial PWD Objection is incorporated herein by reference as set forth in full and capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Initial PWD Objection.

5.      As detailed in the Initial PWD Objection, the Court should not approve the DIP Financing Motion for any or all of the following reasons.  First, the Debtors' cases serve no valid bankruptcy purpose, either because the Sublease was properly terminated prepetition and/or cannot be assumed and/or assigned.

6.      Second, and critically here, the Court should not approve the proposed Roll-up because it impermissibly elevates the Insider DIP's Lender's long unperfected claim to a post-petition secured claim to the detriment of other creditors.

7.      The Roll-up will also harm creditors in that for every dollar rolled up, a dollar is subtracted from the pool of assets available to pay non-insider creditors.  Moreover, notwithstanding the Challenge Period, approval of the Roll-up would unfairly shift the burden of challenging the Roll-up to creditors even though many of the hallmarks supporting such a challenge are demonstrated now, including that 90% of the Insider DIP Lender's prepetition claims were not the subject of perfected security interests and may be subject to avoidance, recharacterization and/or subordination.

8.      If the Court is inclined to approve any form of roll-up, PWD submits such roll-up should be limited to no more than a dollar-for-dollar roll-up and the Debtors should be prohibited from drawing down for any reason other than funding the necessary costs of administering these estates.

9.      Third, the DIP Financing Motion, without any, let alone sufficient, justification for such an extraordinary remedy, would grant a lien on Avoidance Actions (as such term is defined in the DIP Financing Motion) and previously unencumbered assets, the proceeds of which should be reserved for the Debtors' unsecured creditors.  If the Court approves a lien on Avoidance Actions and the Sublease, then the Insider DIP Lender's recovery should be marshalled away from the proceeds thereof, and the Insider DIP Lender should be subject to marshaling such that it be required to satisfy its claims as follows: first, from the prepetition collateral constituting specific machinery and equipment; second, from the previously unencumbered assets and proceeds thereof, and only last from Avoidance Actions.

10.     Finally, approval of the DIP Financing Motion should be denied in that insider transactions warrant heightened scrutiny and the Debtors have failed to satisfy the burden of demonstrating necessity, fairness or arm's-length dealing.

### THE PREPETITION LOAN FACILITIES

11.     The Roll-up would permit the Insider DIP Lender to convert nearly $10 million in purported prepetition debt to post-petition secured debt.

12.     As set forth in the First Day Declaration, the Insider DIP Lender extended to Debtors seven (7) prepetition facilities, as follows:

| DEBTOR FINANCING FACILITIES | | |
|---|---|---|
| **Facility** | **Maturity** | **Amount Outstanding[5]** |
| Secured Promissory Note and Security Agreement, dated March 20, 2026 | December 31, 2026 | $900,857.01 |
| Intercompany Term Loan Agreement, dated February 26, 2026 | December 31, 2026 | $230,882.19 |
| Intercompany Term Loan Agreement, dated December 10, 2025 | December 31, 2026 | $2,041,600.10 |
| Intercompany Term Loan Agreement, dated September 22, 2025 | December 31, 2026 | $1,770,394.01 |
| Intercompany Term Loan Agreement, dated July 1, 2025 | December 31, 2026 | $2,686,255.66 |
| Intercompany Term Loan Agreement, dated June 20, 2025 | December 31, 2026 | $835,723.98 |
| Intercompany Term Loan Agreement, dated March 19, 2025 | December 31, 2026 | $1,210,160.83 |
| **Total Funded Secured Debt:** | | **$9,675,873.83** |

*See, First Day Declaration,* ¶ 37.

13.     No financing statement was filed to perfect the purported security interests granted to the Insider DIP Lender until April 2, 2026, less than a week before the Petition Date.  *See,* Pereira Declaration, Exhibit C.

14.     A review of the loan documents pertaining to the six (6) credit facilities extended between March 19, 2025, and February 26, 2026, totaling $8,775,016.77 in financing, shows that the Debtors granted to the Insider DIP Lender a security interest in only a limited pool of assets, consisting of machinery and equipment only, as follows:

"**Lien**" means a lien attached to the material and equipment of the building "Paint and Blast Building 2" located and stored in Paulsboro, Gloucester County, New Jersey as further described in **Exhibit 1** hereto of full coverage of the Principal properly registered in Lender`s favor to secure Lender`s claim of repayment pursuant to the Agreement.

*See,* Pereira Declaration, Ex. B.

5

15. Critically, there is no evidence of record that the first $8.75 million in financing was negotiated on an arm's-length basis; indeed, Mr. Pratt, the Debtor's Chief Restructuring Officer testified that he was retained only in late March 2026, on the eve of the filing.

16. Similarly, given that no financing statement was ever recorded in connection with the first $8.75 million of credit extended, with respect to such amount the Insider DIP Lender's lien was not perfected.

17. In fact, only the 7th extension of credit, which was extended less than thirty (30) days prior to the Petition Date, in the amount of $900,857.01, is purported to be secured by all the assets of the Debtor. *Id*, Ex. B.

18. Despite the filing of the April 2, 2026 financing statement, however, no security interest or lien was perfected as to the Sublease as no mortgage or other document has been recorded with the Gloucester County Recorder of Deeds. *Id.*, ¶ 6. Thus, as of the Petition Date, the Sublease (to the extent an asset of the Debtors' estates) was unencumbered.

## OBJECTION

19. A court should not approve proposed debtor-in-possession financing unless such financing is in the best interests of the general creditor body. *In re Roblin Industries, Inc.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (citing *In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983)); *see also In re Tenney Village Co., Inc.*, 104 B.R. 562, 569 (Bankr. D.N.H. 1989) ("The debtor's pervading obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries."). Moreover, the proposed financing must be "fair, reasonable, and adequate." *In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

20.     Based on the reasons set forth above, the likely and imminent dismissal of these cases (either as bad faith filings or because the Sublease is not actually property of the estate), the lack of need or urgency for the financing requested as there are no ongoing operations, and the failure of the Debtors and the Insider DIP Lender to satisfy the requirements of the Bankruptcy Code to justify the incurrence of the Insider DIP Financing on such lucrative terms, the DIP Financing Motion should be denied in its entirety.

21.     Additionally, by failing to meet the heightened scrutiny required for approval of transactions with insiders, the proposed Roll-up should either be (a) disapproved, or (b) limited to a 1-for-1 roll-up subject to the doctrine of equitable marshalling.  In any event, the Court should decline to grant liens in favor on the Insider DIP Lender against any unencumbered assets includingactions arising under chapter 5 of the Bankruptcy Code ("Avoidance Actions").

### The Insider DIP Financing Fails the "Entire Fairness" Test.

22.     Where a debtor proposes to enter into a post-petition financing transaction with an insider of the debtor, the business judgment standard does not apply, and courts apply a "heightened" or "rigorous" level of scrutiny to examine whether the transaction is fair and reasonable.  *See In re LATAM Airlines Grp. S.A.*, 2020 WL 5506407 (Bankr. S.D.N.Y. Sept. 10, 2020) (citing *In re Papercraft Corp.*, 211 B.R. 813, 823 (W.D. Pa. 1997), *aff'd and remanded sub nom.*, *Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured claims*, 160 F.3d 982 (3d Cir. 1998)).

23.     "In applying heightened scrutiny, courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration." *In re Innkeepers USA Tr.*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010).  *See also*

*WHBA Real Estate Ltd. P'ship v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship)*, 227 B.R. 445, 454 (S.D.N.Y. 1998) ("[S]ince there is an incentive and opportunity to take advantage … insiders' loans in a bankruptcy must be subject to rigorous scrutiny."); *In re Los Angeles Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (applying the "entire fairness" standard to financing transaction that benefited insider). "[T]he transaction not only has to be fair, but it has to look fair as well." *Innkeepers USA Tr.*, 442 B.R. at 231.

24.     The Debtors also bear the burden of demonstrating the entire fairness of the insider transaction. *Papercraft Corp.*, 211 B.R. at 823 ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein.").

25.     Although the term "insider" is defined in section 101(31) of the Bankruptcy Code, the statutory definition is not exclusive, and courts have interpreted the term to include anyone "who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *LATAM*, 2020 WL 5506407, at *28.

26.     Here, the Insider DIP Lender is owned and controlled by the same ultimate beneficial owners as the Debtors and an acknowledged insider. *See First Day Declaration*, ¶ 18.

A.          The Roll-Up Should be Denied or Significantly Limited

27.     Although a common tool in post-petition financing, the roll-up of prepetition debt can only be approved upon the demonstration it was negotiated in good faith and is inherently fair to creditors. Here, the Debtors must – but cannot – establish that the proposed insider Roll-up of prepetition indebtedness was negotiated in good faith and at arms' length and/or is entirely fair to creditors.

8

28.     While averring that the Insider DIP Lender appointed an undisclosed individual to negotiate the Insider DIP facility, the Debtors offer no evidence that the terms of the Insider DIP Facility were negotiated on an arm's-length basis or in good faith.

29.     Here, the Insider DIP Lender's purported liens on a slim subset of prepetition assets were not perfected with respect to 90% of the prepetition debt for which approval of the Roll-up is sought.  In fact, though financing was extended beginning in March 2025, no financing statement was ever filed until one week prior to the Petition Date.

30.     Given that the purported security interests granted with respect to 90% of that debt were limited in nature, the Debtors should not be permitted to roll-up the entirety of prepetition debt to be secured by otherwise unencumbered assets (i.e. the Sublease). Given further the potential avoidance of the liens, the approval of the Roll-up would result in a manifestly unjust result.  *See*, *In re Tenney Village Co., Inc.*, 104 B.R. 562, 571 (D.N.H. 1989) (noting that Section 364 does not countenance the inversion of the priority scheme of the Bankruptcy Code); *Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490,  1496 (11th Cir. 1992) (recognizing that cross-collateralization is inconsistent with the priority scheme of the Bankruptcy Code)

31.     If this Court is inclined to permit the Roll-up, then it should be subject to complete unwinding in connection with a successful Challenge, it should be creeping, and it should not encumber previously unencumbered assets and proceeds thereof.

32.     On examination, the clear purpose of the Insider DIP Financing is to obtain benefits for the sole protection of the Insider DIP Lender (and, therefore, the ultimate beneficial owners of the Debtors) to finance the continued litigation with PWD, at the expense of PWD and the other creditors.  This is not a result envisioned by the Bankruptcy Code.

B.        The Granting of Additional Liens, Including on Unencumbered Assets, Is Not Warranted.

33.    Pursuant to the DIP Financing Motion, the Debtors request approval to use estate property, including cash collateral, and to provide purportedly secured creditors with replacement liens and super priority claims.

34.    Under Section 552(a) of the Bankruptcy Code, however, "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

35.    Accordingly, prepetition liens normally do not extend to post-petition property or receivables except to the extent such property or receivables constitute proceeds, products, offspring, or profits arising from prepetition collateral.

36.    Although bankruptcy courts frequently grant replacement liens to prepetition secured creditors in consideration for use of their collateral, under the circumstances of these cases, the granting of replacement liens and super priority claims may further harm Debtor's unsecured creditors.

37.    In any event, if inclined to grant liens on some unencumbered assets, the Court should prohibit the encumbrance of the Sublease (which is not even an asset of the Debtors' estates) or any claims brought under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (which will target the very insiders requesting the liens).

38.    Alternatively, even if a final determination is made that the Sublease was not validly terminated prepetition and is otherwise an asset of the estates, then the extent of any security interest therein should be limited to comply with the express terms of the Sublease. Importantly, the Sublease provides that any pledge of the Sublease or granting of a mortgage thereon shall be expressly limited such that it will not be prior to or an encumbrance on the

10

leasehold interest of PWD or on any reversionary or other interest of PWD in the sublet premises. *See*, Ex. A.

39.     Likewise, the Insider DIP Lender should not be granted a lien on proceeds of the Avoidance Actions.

40.     The proceeds of Avoidance Actions may provide an avenue for significant recovery in favor of unsecured creditors, which should not be diverted to the Debtors' insiders who (if the DIP Financing Motion is approved as written) will benefit from a Roll-up of prepetition indebtedness.

41.     Avoidance Actions should principally benefit unsecured creditors and the granting of liens in favor of the very debtor affiliate that is likely to be a primary of such actions is tantamount to releasing such claims.  *See*, e.g.*, Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.),* 330 F.3d 548, 573 (3d Cir. 2003) (noting that "avoidance actions . . . are intended to afford unsecured creditors peace of mind, for those creditors are usually the principal victims of managerial misfeasance," cautioning against the "fox guarding the henhouse," and emphasizing that "avoidance actions are designed to protect" the interests of "unsecured creditors").

42.     Accordingly, the liens on Avoidance Actions and proceeds thereof should be stricken from the Final Order.  At the very least, the Insider DIP Lender should not obtain liens on any Avoidance Actions with respect to or claims (or the proceeds thereof) against (a) the Insider DIP Lender, (b) the common owners of the Debtors and the Insider DIP Lender, or (c) any and all of their respective insiders and/or affiliates.

43.     Indeed, the liens granted in favor of the Insider DIP Lender with respect to the prepetition obligations are very likely the subject of preference and or fraudulent transfer claims.

Granting liens on Avoidance Actions in favor of the Insider DIP Lender risks that these claims against the Insider DIP Lender, its affiliates and/or insiders, are never pursued to the detriment of the Debtors' true creditors.

C.      <u>The Proposed Waiver of the "Equities of the Case" Exception Under Section 552(b) Is Unjustified.</u>

44.      The Insider DIP Lender is purportedly a prepetition secured creditor. As noted above, under section 552(a), a prepetition secured creditors' lien rights ordinarily do not extend to post-petition property.  However, pursuant to section 552(b) of the Bankruptcy Code, prepetition secured creditors are entitled to post-petition liens on post-petition property to the extent such property constitutes inventory, accounts receivable, and similar assets arising from the disposition of prepetition collateral.

45.      Section 552(b) provides an important exception that allows a bankruptcy court to cut off a prepetition security interest in post-petition proceeds "based on the equities of the case."

46.      "The 'equities of the case' provision is intended to prevent secured creditors from receiving windfalls and to allow bankruptcy courts broad discretion in balancing the interests of secured creditors against the general policy of the Bankruptcy Code, which favors giving debtors a 'fresh start.'" *In re Patio & Porch Systems, Inc.*, 194 B.R. 569, 575 (Bankr. D. Md. 1996).

47.      Paragraphs 8 and 9 of the Interim Order provide that, subject to entry of the Final Order, "the Prepetition Secured Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the 'equities of the case' exception under section 552(b) of the Bankruptcy Code against Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral."

12

48.     Other than noting the inclusion of this provision in the Interim Order, the DIP Financing Motion fails to otherwise address the "equities of the case" exception and utterly fails to state any justification for a waiver of such statutory and equitable powers.

49.     As the Insider DIP Lender is an insider, there is potential that the "equities of the case" exception may apply.  As the Debtors have not articulated any justification as why it should be disregarded, this Court should deny the waiver of the "equities of the case" exception.

D.     The Proposed Section 506(c) Waiver is Unjustified.

50.     Paragraph 8 of the Interim DIP Order provides that, subject to entry of a Final Order, no costs or expenses of administration incurred in this case may be charged against or recovered from the Insider DIP Lender, the DIP Collateral or the Prepetition Collateral or any of their claims pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the Insider DIP Lender.

51.     Like the "equities of the case" exception, section 506(c) is intended to prevent a "windfall" to the secured creditor at the expense of the bankruptcy estate. *In re Visual Industries, Inc.*, 57 F.3d 321, 325-26 (3d Cir. 1995).  Section 506(c) "understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate." *Id.*

52.     A waiver of section 506(c) rights should be granted sparingly, and a debtor should put forth compelling reasons for waiving its 506(c) rights since such a waiver is binding on all creditors and parties in interest. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 12 (2000).

53.     As with its request for a waiver of the "equities of the case" exception, the Debtors have failed to set forth any justification whatsoever for a section 506(c) waiver.  Indeed, these

cases were seemingly gerrymandered to enrich and enhance the position of the Insider DIP Lender and, therefore the Insider DIP Lender should fairly bear the costs covered in Section 506(c).

54.    Significantly, the Debtors aver that a sale process was run in the eighteen months leading into the bankruptcy cases and such process was unsuccessful, which raises a question about the likelihood of a successful sale process and whether the estate will become administratively solvent.

55.    Prohibiting the recovery of costs of preserving collateral would impose an additional burden upon and otherwise harm the estates as part of a transaction that appears to primarily benefit the Debtors' owners and insiders.

56.    Moreover, if the Court affords the Insider DIP Lender the additional protections and benefits requested, including the Roll-up, and such a transaction cannot be realized, in the resulting administrative insolvency the DIP facility will have served only to elevate the Debtors' insider above all of the Debtors' true creditors.

57.    In the absence of any articulated justification for such a waiver, the Court should deny the 506(c) waiver.

## <u>RESERVATION OF RIGHTS</u>

PWD expressly reserves all rights with respect to the relief sought in the DIP Financing

Motion and expressly reserves the right to raise additional issues regarding the DIP Financing

Motion and approval of the proposed Final Order at or prior to the hearing on the same.  PWD

notes that it has not received a draft of the proposed Final Order as of the time of this writing.

**WHEREFORE**, PWD respectfully requests entry of an order denying the relief requested

in the DIP Financing Motion in its entirety and granting such other and further relief as the Court

deems just and proper.


Respectfully,



Dated: April 23, 2026                    /s/ Daniel M. Pereira
                                         Michael D. O'Mara
                                         Julie M. Murphy
                                         Daniel Pereira
                                         Stradley Ronon Stevens & Young, LLP
                                         457 Haddonfield Rd., Suite 100
                                         Cherry Hill, New Jersey 08002
                                         T: (856) 321-2409
                                         E-Mail: momara@stradley.com
                                                 jmmurphy@stradley.com
                                                 dpereira@stradley.com

                                         -and-

                                         Lawrence G. McMichael*
                                         Scott J. Freedman
                                         Dilworth Paxson LLP
                                         457 Haddonfield Road, Suite 700
                                         Cherry Hill, New Jersey 08002
                                         T: (856) 675-1900
                                         E-Mail: lmcmichael@dilworthlaw.com
                                                 sfreedman@dilworthlaw.com

                                         *Attorneys for Paulsboro Waterfront Development
                                         LLC*

15